UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN VIVO, III, | : |
|     Plaintiff, | : |
| | : |
|        v. | : |
| | :  Case No. 3:19cv132(AWT) |
| WARDEN SCOTT ERFE, | : |
|     Defendants. | : |

**<u>INITIAL REVIEW ORDER</u>**

The plaintiff, John Vivo, III, is confined at Cheshire Correctional Institution ("Cheshire").  He has filed a civil action <u>pro se</u> pursuant to 42 U.S.C. § 1983 against Warden Scott Erfe, Deputy Warden of Treatment and Programs Amonda Hannah, Correctional Officer Rowold and District Administrator Angel Quiros.[1]  He alleges that the defendants have violated his rights under the First, Eighth and Fourteenth Amendments.  For the reasons set forth below, the court will dismiss the complaint in part.

## I.  **<u>Legal Standard</u>**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

---

[1] It is evident from the attachments to the complaint that Deputy Warden Hannah's last name is spelled Hannah and not Hanna.  <u>See</u> Compl. at 38, 42.  Thus, the court refers to Deputy Warden Hannah using the correct spelling of her last name.

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  Id.  This standard for review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee."  Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  Id. (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).
Although courts still have an obligation to interpret "a pro se
complaint liberally," the complaint must include sufficient
factual allegations to meet the standard of facial plausibility.
See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations
omitted).

## II.  **Factual Allegations**

The plaintiff has been confined at Cheshire since June 16,
2016.  See Compl., Doc. No. 1, at 3 ¶ 7.  He has practiced the
Native American faith or religion since 2004.  See id. ¶ 8 & at
16, Ex. B.  As part of his religion, the plaintiff participates
in outdoor smudging rituals for twenty minutes every morning
before sunrise.  Id. ¶¶ 9-10.  Smudging is a purifying or
cleansing technique that is central to the Native American
religion and involves burning sacred plants and engaging in
communal prayer.  Id. ¶ 10.

On June 23, 2016, the plaintiff signed the Memorandum of
Understanding and Use Agreement for Individual Smudging at
Cheshire.  Id. ¶ 13.  During June, July and most of August 2016,
the plaintiff could not use the sweat lodge to smudge because
there was no Native American Elder at Cheshire.  Id. ¶ 12.

Warden Erfe would not permit the plaintiff to smudge on
August 6, 2018 or on August 10, 2018 due to a prison lockdown or

3

due to staff training.  Id. ¶ 14 & at 29-30, Ex. G.  On September 28, 2016, Correctional Officer Lopes informed the plaintiff that he could not smudge due to a lockdown at Cheshire.  Id. ¶ 15.

On September 24, 2016, the plaintiff submitted a complaint to the Commission on Human Rights and Opportunities ("CHRO") in Hartford, Connecticut, claiming Warden Erfe and Administrator Quiros had discriminated against him on the basis of his religion by depriving him of the opportunity to smudge on August 6, 2018 and on August 10, 2018.  Id. at 4 ¶ 17; Ex. G.  On December 28, 2016, the CHRO dismissed the complaint and issued a "Release of Jurisdiction".  Id.

On October 15, 2016, the plaintiff submitted an inmate request to Deputy Warden Hannah because an officer had failed to permit him to smudge earlier that day.  Id. at 4 ¶ 17. On November 11, 2016, the plaintiff submitted an inmate request to Deputy Warden Viger regarding his need for a coat and hat to wear during smudging due to the cold temperatures in the smudging area.  Id. ¶ 20.  On November 16, 2016, Deputy Warden Hannah sent the plaintiff a response to his October 15, 2106 inmate request and indicated that his concerns had been addressed by the third shift commander.  Id. at 42.  The third shift commander was to follow up with the third shift

4

supervisors to ensure that smudging occurred on a consistent basis.  Id.

On November 18, 2016, Correctional Officer Rowold denied the plaintiff the opportunity to smudge.  Id. at 5 ¶ 21. On November 30, 2016, Deputy Warden Hannah informed the plaintiff that coats and hats would not be provided to inmates who smudge. Id. at 5 ¶ 22.  On December 6, 2016, the plaintiff filed a grievance regarding the unavailability of coats and hats for Native American inmates who needed to smudge on days that were extremely cold.  Id. ¶ 23.  On February 6, 2017, Warden Erfe denied the grievance.  Id. ¶ 24.  On February 10, 2017, the plaintiff filed an appeal of the denial of his grievance.  Id. ¶ 25.  On March 2, 2017, District Administrator Quiros denied the appeal, and he indicated that the plaintiff had exhausted his administrative remedies and that a level appeal would not be answered.  Id. at 7 ¶ 37; at 40, Ex. M.  The plaintiff attempted to appeal the decision of Administrator Quiros anyway.  Id. ¶ 38.  On April 10, 2107, an administrative grievance coordinator indicated that the appeal would not be answered.  Id. ¶ 39.

It was very cold during the winter months of 2016-2017 and 2017-2018.  Id. at 6 ¶¶ 27-28.  The plaintiff became sick several times because the defendants did not provide him with a

coat or hat to wear while he engaged in the smudging ritual.
Id. ¶ 28.

On February 15, 2017, the plaintiff wore another inmate's coat during the outdoor smudging ritual. Id. ¶ 29. When the plaintiff came back inside from the sweat lodge, Officer Rowold asked him whether he had been working. Id. The plaintiff indicated that he had not returned to his prison job because he was still recovering from surgery. Id. Later that day, Officer Rowold issued the plaintiff a disciplinary ticket for contraband because he had used a coat that did not belong to him. Id. ¶ 30. An investigator subsequently deferred the disposition of the ticket for sixty days. Id. ¶ 32.

On February 23, 2017, the plaintiff filed a complaint with the CHRO claiming that Correctional Officer Rowold had retaliated against him by issuing him a false disciplinary report. Id. at 7 ¶ 34. On July 27, 2017, the CHRO indicated that it would retain jurisdiction over the complaint for further investigation. Id. at 8 ¶ 40. On November 27, 2017, the CHRO dismissed the complaint and issued a "Release of Jurisdiction." Id. at 7 ¶ 34.

On July 28, 2107, intelligence staff members strip searched a number of Native American inmates, including the plaintiff, prior to their smudging session. Id. at 8 ¶ 40. On March 14,

2018, officers issued coats and hats to Native American inmates to be used during the smudging ritual.  Id. ¶ 41.  This concession was made pursuant an agreement reached in another federal case filed by a Native American inmate, Michalski v. Semple, et al., Case No. 3:16cv2039(DJS)(ECF No. 60).  Id. ¶ 42.

On June 15, 2018, the plaintiff sent a letter to Counselor Supervisor Peterson asking to be considered for a peer mentor position in Counselor Moore's Peer Mentor Program.  Id. ¶ 44.  At the end of August 2018, the plaintiff sent a follow-up request to Counselor Supervisor Peterson and Warden Erfe.  On September 17, 2018, Counselor Supervisor Peterson indicated that the plaintiff must already be involved in Counselor Moore's peer mentor program to be considered for a Peer Mentor position.  Id. at 98, Ex. R.  As of January 23, 2019, the plaintiff had not been interviewed for the peer mentor position.  Id. at 8 ¶ 45.

## III. Discussion

The plaintiff claims that that the defendants denied him the opportunity to practice his religious faith in violation of the First Amendment's Establishment and Free Exercise Clauses, retaliated against him for exercising his First Amendment right to file seek redress of grievances, subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment, and treated him differently in violation of

the Fourteenth Amendment's Equal Protection Clause.  For relief, he seeks monetary damages and a declaratory judgment that the defendants violated his constitutional rights.

### A.    Eleventh Amendment

The plaintiff sues the defendants in their individual capacities only.  Even if the court construed the complaint as having been filed against the defendants in their official capacities, the request for a declaration that the defendants violated his rights in the past fails to state a claim upon which relief may be granted.

Under the doctrine of Ex parte Young, 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future. See In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007); Ward v. Thomas, 207 F.3d 114, 120 (2d Cir. 2000).  In determining whether Ex Parte Young applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (internal quotation marks and citation omitted).

The plaintiff's request for a declaration that the defendants violated his federal constitutional rights in 2016, 2017 and 2018 is barred by the Eleventh Amendment.  See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); Green v. Mansour, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief") (citations omitted). Furthermore, if the plaintiff were to prevail on any of his First, Eighth or Fourteenth Amendment claims, the court necessarily would determine that the defendants had violated his constitutional rights.  Thus, a separate award of declaratory relief is unnecessary.  Accordingly, to the extent that the plaintiff sues the defendants in their official capacities and seeks a declaratory judgment, that request for relief is dismissed.  See 28 U.S.C. § 1915A(b)(1).

### B.   First Amendment - Religion

The First Amendment to the United States Constitution provides, in relevant part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...."  U.S. Const. amend. I.  The plaintiff contends that the defendants have violated the Free Exercise

9

Clause of the First Amendment by denying him the opportunity to practice his religious beliefs and have also violated the Establishment Clause of the First Amendment by refusing to permit him to smudge at various times during the period from June 23, 2016 to November 18, 2016 and by forcing him to either to cut short his smudging ceremony or not smudge at all because they would not provide him with a coat and hat to use in the outdoor sweat lodge during the cold winter months of 2016, 2017 and 2018.

### 1.   Free Exercise Clause

It is well-established that an inmate has a First Amendment right to freely exercise his or her chosen religion.  See O'Lone v. Estate of Shabazz, 283 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.")  An inmate's First Amendment rights, however, are "[b]alanced against ... the interests of prison officials charged with complex duties arising from the administration of the penal system."  Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (internal quotation marks and citation omitted).  Thus, an inmate's right to freely exercise his or her religion is not without limits and may be subject to restrictions related to legitimate concerns involving safety and security.  See Pell v.

_Procunier_, 417 U.S. 817, 822 (1974) (A "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.")  A regulation or policy that burdens an inmate's religious practices "will not be held to violate a[n] [inmate's] right to free exercise of religion if that [regulation or] policy 'is reasonably related to legitimate penological interests.'"  _Redd v. Wright_, 597 F.3d 532, 536 (2d Cir. 2010) (quoting _O'Lone_, 482 U.S. at 349).

To state a First Amendment free exercise claim, an inmate is required to make a threshold showing "that the disputed conduct substantially burden[ed] his sincerely held religious beliefs." _Salahuddin v. Goord_, 467 F.3d 263, 274-75 (2d Cir. 2006).[2]  In determining whether an inmate's religious beliefs are

---

[2] The Second Circuit has observed that a question exists as to whether an inmate must establish that the conduct of prison officials resulted in a "substantial burden" on his religious beliefs in order to state a First Amendment free exercise claim. See _Williams v. Does_, 639 F. App'x. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs.") (citing _Holland v. Goord_, 758 F.3d 215, 220 (2d Cir. 2014); _Barnes v. Furman_, 629 F. App'x. 52, 55 n. 3 (2d Cir. 2015) ("We have not decided whether the substantial burden test remains viable in our Circuit. . . .")(citation omitted); _Ford_, 352 F.3d at 592 (assuming without deciding that substantial burden requirement applies).  Because the issue has not yet been squarely addressed by the Second Circuit, this court will continue to apply the substantial burden test.

sincere, a district court should not "evaluate the objective
reasonableness of the [inmate's] belief" but consider only
whether the [inmate] "sincerely holds a particular belief and
whether the belief is religious in nature." Ford, 352 F.3d at
590.

If an inmate asserts sufficient facts to state a plausible
claim that prison officials engaged in conduct that burdened the
free exercise of his or her religious beliefs, those officials
then must "identify[] the legitimate penological interests that
justif[ied] [their] conduct. Salahuddin, 467 F.3d at 275
(citations omitted). "The burden remains with the [inmate] to
show that" the concerns articulated by the prison officials are
"irrational." Id. (internal quotations omitted).

The plaintiff has alleged that he has practiced the Native

---

See Richard v. Strom, No. 3:18-CV-1451 (CSH), 2018 WL 6050898,
at *3 (D. Conn. Nov. 19, 2018)(noting the "Second Circuit['s]
uncertainty" as to whether an inmate must continue to make a
"threshold showing" that the conduct of the prison official
substantially burdened his or her religious beliefs, but
observing that "absent instruction to the contrary, Second
Circuit courts have continued to assume the validity of the
substantial burden test when addressing free exercise claims")
(citations omitted); Smith v. Artus, No. 9:07-CV-1150 NAM/ATB,
2015 WL 9413128, at *9 (N.D.N.Y. Dec. 22, 2015) ("In the absence
of guidance from a higher court, this Court applies the
traditional formulation that, to prevail on a First Amendment
claim, an inmate must show that he has a sincerely held
religious belief, that it was substantially burdened, and that
defendants' conduct was not reasonably related to some
legitimate penological interest.").

American religion or faith since 2004 and that he is unable to engage in meaningful worship according to the dictates of his religion if he cannot participate in sweat lodge ceremonies. At various times from June 23, 2016 to November 18, 2016, the defendants interfered with his ability to practice his religion or faith by refusing to permit him to smudge.  The plaintiff also asserts that in the cold winter months of 2016, 2017 and 2018, he was forced to either cut short his smudging ceremony or not smudge at all because the defendants failed to make a coat and hat available to him to wear during the outdoor sweat lodge ceremony.  The court concludes that the plaintiff has stated a plausible claim that the defendants unconstitutionally and substantially burdened his right to free exercise of his sincerely held religious practices in violation of the First Amendment.  This claim will proceed against the defendants in their individual capacities.

### 2.   **Establishment Clause**

The Establishment Clause of the First Amendment requires that a government neither encourage, nor discourage religion. To determine whether an inmate states a First Amendment Establishment Clause claim, the court applies the three-part test set forth in Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971).  Under Lemon, government action which impacts religious

13

activity (1) "must have a secular . . . purpose," (2) must have a "principal or primary effect . . . that neither advances nor inhibits religion," and (3) "must not foster an excessive government entanglement with religion." Id.

The plaintiff alleges that the defendants denied him the right to participate in the smudging ritual on a number of occasions during the period from June 23, 2016 to November 18, 2016 due to prison lockdowns or due to the unavailability of religious or custody staff members to oversee the smudging ritual.  The defendants also denied him the use of a hat and coat to smudge outdoors in the winter months of 2016, 2017 and 2018 for no apparent reason.  The plaintiff claims that the defendants' failure to permit him to smudge at all on certain occasions or to provide him with the necessary outerwear to make smudging possible during the winter months inhibited the practice of his religion.  There are insufficient facts to determine whether the conduct or decisions of the defendants involved an excessive entanglement between the Department of Correction and the plaintiff's religion.  The court will permit the Establishment Clause claim to proceed for further development of the record.

**C.**   **First Amendment - Retaliation**

The plaintiff asserts two retaliation claims.  He claims

14

that on February 15, 2017, Officer Rowold issued him a disciplinary report for contraband in retaliation for a grievance that he filed in December 2016.  He also claims that Warden Erfe denied him the opportunity to become a peer mentor in retaliation for his filing of grievances and/or lawsuits.

To state a First Amendment retaliation claim, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action."  Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted).  The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  Id. at 295 (internal quotation marks and citation omitted).

### 1.   **Officer Rowold**

Filing lawsuits and filing grievances constitute protected activities.  See Baskerville v. Blot, 224 F. Supp. 2d 273, 731 (S.D.N.Y. 2002) (noting that a "prisoner's filing of a

15

grievance" and "the filing of a lawsuit" are "constitutionally protected activit[ies]") (citations omitted)).   Thus, the plaintiff has satisfied the first element of a retaliation claim against defendant Rowold.   Also, courts have held that the filing of a false disciplinary report may constitute an adverse action.   See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right, such as the filing of a grievance, states a claim under § 1983."); Mateo v. Fischer, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) ("Filing a false misbehavior report about Mateo ... would deter a similarly situated person of ordinary firmness from exercising his First Amendment rights.").

    With regard to the third element of a retaliation claim, the plaintiff alleges that Officer Rowold filed the disciplinary report against him approximately two months after he filed a grievance against Officer Rowold.   During approximately the same time period, other Native American inmates used coats that did not belong to them but did not receive disciplinary reports.   See Compl., Ex. P.   The temporal proximity between the grievance filed by the plaintiff against Officer Rowold regarding the coat and hat policy, the fact that other inmates who borrowed coats did not receive disciplinary reports and the deferral of the

16

disciplinary report due to the plaintiff's good disciplinary history suggest a causal connection between the issuance of the disciplinary report and the grievance filed against Officer Rowold.  See Gayle, 313 F.3d at 683 (noting that "the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation") (citation omitted); Barclay v. N.Y., 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) ("Types of circumstantial evidence that can show a causal connection between the protected conduct and the alleged retaliation include temporal proximity, prior good disciplinary record, finding of not guilty at the disciplinary hearing, and statements by defendants as to their motives.") (citations omitted).  Accordingly, the First Amendment retaliation claim will proceed against Officer Rowold in his individual capacity.

   **2.   Warden Erfe**

   The plaintiff alleges that in 2017 and 2018, he sought to participate in the Peer Mentor Program run by Counselor Moore. In June 2018, he submitted a request to Counselor Peterson to be considered for a Peer Mentor position within the Program.  See Compl., Ex. R.  In August 2018, he sent a letter addressed to Counselor Peterson and Warden Erfe seeking to be included in the Peer Mentor Program.  See id.  On September 17, 2018, Counselor

Peterson sent a written response to the plaintiff reiterating that he must already be involved in Counselor Moore's Peer Mentor Program to be considered for a Peer Mentor position and directed the plaintiff to contact Counselor Moore.  See id.

The plaintiff believes that he has not been accepted into the Peer Mentor Program because he files lawsuits.  There are no facts to support the plaintiff's claim that Warden Erfe denied his request to be allowed to participate in Counselor Moore's Peer Mentor Program or that he was involved in any decision by other correctional personnel to deny the plaintiff the opportunity to participate in the Program.  Rather the plaintiff's claim that he has not yet been accepted into the Program due to a retaliatory motive on the part of Warden Erfe is speculative.  See Dorsey v. Fisher, 468 F. App'x 25, 27 (2d Cir. 2012) ("[W]here ... the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation.") (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  The First Amendment retaliation claim against Warden Erfe is dismissed.  See 28 U.S.C. § 1915A(b)(1).

   D.   **Equal Protection**

The plaintiff alleges that the defendants treated him and other Native American inmates at Cheshire differently than other

inmates at Cheshire who had to work outdoors in the winter months in violation of the Fourteenth Amendment's Equal Protection Clause.  The Fourteenth Amendment provides in pertinent part that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

The Equal Protection Clause protects individuals from invidious discrimination.  It does not mandate identical treatment for each individual or group of individuals.  Instead, it requires that similarly situated persons be treated the same.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985).  To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals, and (2) that the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980).

The plaintiff has alleged that the defendants provided hats and coats to inmates who were required to work outside during the winter months but did not provide hats and coats to Native

American inmates who engaged in the smudging ritual outdoors during the winter months.  Thus, he asserts that the defendants discriminated against him for exercising his First Amendment right to practice his Native American religion and that there was no rational basis for this difference in treatment.  The court will permit the Fourteenth Amendment equal protection claim to proceed against the defendants in their individual capacities.

### E.    Eighth Amendment - Conditions

Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs … or the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must establish both an objective and a subjective element.  To establish the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or

safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Rhodes,
452 U.S. at 347.  The Supreme Court has identified the following
as basic human needs or life necessities of an inmate: food,
clothing, shelter, medical care, warmth, safety, sanitary living
conditions and exercise.  See Wilson v. Seiter, 501 U.S. 294,
304 (1991); DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489
U.S. 189, 200 (1989); Rhodes, 452 U.S. at 348.  To establish the
subjective element, an inmate must allege that the defendants
possessed culpable intent; that is, they knew that he faced a
substantial risk to his health or safety and disregarded that
risk by failing to take corrective action.  See Farmer, 511
U.S. at 834, 837.

    The plaintiff alleges that the defendants deprived him of
the basic human need for clothing to be worn outside in the
winter and that he became sick on several occasions from
exposure to the cold temperatures.  The court concludes that the
plaintiff has asserted sufficient facts to establish the
objective prong of the Eighth Amendment standard.  The plaintiff
alleges that he made the defendants aware of the cold
temperatures and his need for a coat and hat due to his
propensity to become ill due to a lack of a spleen but they
refused to provide him with either item of clothing.  Compl. at
4-6 ¶¶ 20-27.  These allegations are sufficient to establish the

subjective prong of the Eighth Amendment standard.  The Eighth
Amendment claim will proceed against the defendants in their
individual capacities.

**ORDERS**

The court enters the following orders:

(1)  The request for a declaratory judgment against the
defendants in their official capacities and the First Amendment
retaliation claim against Warden Erfe are **DISMISSED** pursuant to
28 U.S.C. § 1915A(b)(1).  The First Amendment Free Exercise
Clause and Establishment Clause claims will proceed against the
defendants in their individual capacities, the First Amendment
retaliation claim will proceed against Officer Rowold in his
individual capacity, the Eighth Amendment conditions claim will
proceed against all defendants in their individual capacities,
the Fourteenth Amendment Equal Protection Clause claim will
proceed against all defendants in their individual capacities,
and the First Amendment retaliation claim will proceed against
Hannah in her individual capacity.  The Clerk is directed to
revise the docket to reflect that defendant Amonda Hanna's last
name is spelled Hannah.

(2)  Within twenty-one (21) days of this order, the Clerk
shall verify the current work addresses of: Warden Scott Erfe,
Deputy Warden Amonda Hannah, District Administrator Angel Quiros

and Correctional Officer Rowold and mail a copy of the
complaint, this order, and a waiver of service of process
request packet to each defendant in his or her individual
capacity at his or her confirmed address.  On the thirty-fifth
(35th) day after mailing, the Clerk shall report to the court on
the status of each request.  If any defendant fails to return
the waiver request, the Clerk shall make arrangements for in-
person service by the U.S. Marshals Service and that defendant
shall be required to pay the costs of such service in accordance
with Federal Rule of Civil Procedure 4(d).

(3)  The defendants shall file their response to the
complaint, either an answer or motion to dismiss, within sixty
(60) days from the date the notice of lawsuit and waiver of
service of summons forms are mailed to them.  If the defendants
choose to file an answer, they shall admit or deny the
allegations and respond to the cognizable claims recited above.
They may also include any and all additional defenses permitted
by the Federal Rules.

(4)  Discovery, pursuant to Federal Rules of Civil
Procedure 26 through 37, shall be completed within six months
(180 days) from the date of this order.  Discovery requests need
not be filed with the court.

(5)  All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6)  The Clerk shall send a copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

(7)  The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

It is so ordered.

Signed this 23rd day of December, 2019, at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge
